ARWADY HAND TRUCKS SALES,
INC. d/b/a Arwady Sales
Company, Petitioner,

v.

Russell M. VANDER WERF, Director
of Industry Operations, Houston Field
Division, Bureau of Alcohol, Tobacco,
Firearms, and Explosives, Respondent.

Civil Action No. H–06–4036.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 7, 2007.

J. Allen Halbrook, Jr., Sneed Vine, et al, Austin, TX, for Plaintiff, Arwady Hand Truck Sales, Inc.

Samuel G. Longoria, U.S. Attorneys Office, Houston, TX, for Defendant, Russell M. Vander Werf.

## ORDER

DAVID HITTNER, District Judge.

Pending before the Court is Respondent's Motion for Summary Judgment (Instrument No. 22) and Petitioner's Cross–Motion for Summary Judgment (Instrument No. 24). Having considered the motions, submissions, and applicable law, the Court determines that Respondent's motion should be granted and Petitioner's cross-motion should be denied.

## BACKGROUND

Petitioner Arwady Hand Trucks Sales, Inc., d/b/a Arwady Sales Company ("Arwady") brings this cause of action against Russell M. Vander Werf, Director of Industry Operations for the Houston Field Division of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").[1] Arwady, a Texas corporation with its principal place of business in Houston, Texas, filed a petition seeking de novo judicial review of the ATF's denial of its renewal

---

1. Although Arwady brings this action against Russell M. Vander Werf in his official capacity as Director of the Houston division of the ATF, the Court refers to Respondent as the ATF.

application for a federal firearms license. Specifically, Arwady claims the ATF improperly denied its renewal application because the ATF did not conduct Arwady's denial hearing pursuant to the Administrative Procedures Act ("APA"), the ATF considered inappropriate evidence in its denial determination, and Arwady did not willfully violate the Gun Control Act's ("GCA") requirements.

Arwady has held a federal firearms license and has operated as a dealer in firearms since 1989. The GCA, 18 U.S.C. §§ 921–931, which governs the licensing of firearms importers, manufacturers, and dealers, authorizes the ATF to inspect licensed firearm businesses in order to ensure the business complies with federal firearms license regulations. *See* 18 U.S.C. § 923(g). The ATF inspected Arwady in 1991, 1996, 1999, and 2004 and discovered record-keeping violations in all four investigations.

Specifically, as a result of the 1991 investigation, the ATF cited Arwady for violating 27 C.F.R. § 178.124 and 27 C.F.R. § 178.125(e) because Arwady failed to properly complete Firearm Transaction Records, ATF Forms 4473 ("4473s"), and Acquisition and Disposition Records.[2] Following the 1991 investigation, the ATF verbally explained to Arwady's owner, Robert Arwady, the regulations that were violated and instructed Mr. Arwady on methods to correct past violations and prevent future ones. Additionally, Mr. Arwady signed the violation report indicating that he understood the violations and that each had been explained to him.[3]

After the 1996 inspection, the ATF cited Arwady for continued record-keeping errors. As in 1991, the ATF discovered inaccurate and incomplete Acquisition and Disposition Records and 4473s. The 1996 investigation found Arwady failed to record the disposition of hundreds of firearms. Furthermore, the inspection uncovered criminal violations of the GCA that resulted in the indictment of Mr. Arwady and Jeff Lewis, an Arwady employee. Mr. Arwady was later acquitted of the firearm charges; however, Mr. Lewis was convicted.

As a result of the June 1999 inspection, the ATF again cited Arwady for incomplete and inaccurate record-keeping. Specifically, Arwady improperly executed 4473s and failed to record the disposition of firearms in the Acquisition and Disposition Records. On September 2, 2004, the ATF again inspected Arwady and discovered thirteen classes of violations comprised of: (1) failure to complete or properly execute 4473s; (2) failure to account for numerous missing firearms; (3) failure to timely record various other records; and (4) failure to adhere to required procedures prior to the transfer of firearms.

In 2005, Arwady filed an application to renew its federal firearms license. On April 24, 2006, the ATF notified Arwady of the denial of its license. Mr. Arwady timely requested a hearing to review the Notice of Denial pursuant to 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.72. Accordingly, on July 26, 2006, the ATF held a hearing in Houston, Texas at the ATF Houston Field Division Office ("ATF hearing"). Arwady, represented by counsel,

---

**2.** The Code of Federal Regulations ("C.F.R.") is the codification of general and permanent rules and regulations published by executive departments and agencies of the federal government. Title 27 of the C.F.R. contains the rules and regulations governing alcohol, tobacco products, and firearms.

**3.** Mr. Arwady signed a violation report following each of the subsequent inspections as well.

called witnesses and presented evidence. On November 1, 2006, the ATF issued Final Notice denying Arwady's renewal application. Arwady timely petitioned this Court for judicial review of the ATF''s final denial on December 21, 2006. The ATF and Arwady both move for summary judgment.

Arwady, in its cross-motion for summary judgment, asserts the APA requires the ATF hearing to be conducted in accordance with the APA adjudication procedures and that the ATF''s failure to comply with the APA resulted in a violation of Arwady's constitutional due process rights. Moreover, Arwady claims that it did not willfully violate the GCA and regulations governing its license. Thus, the ATF improperly denied its firearms license renewal application.

In its motion for summary judgment, the ATF first argues the adjudication procedures required by the APA are not applicable to ATF administrative hearings held in conjunction with the revocation or denial of a firearms license. Additionally, the ATF asserts Arwady willfully violated the GCA by failing to engage in proper record-keeping which authorizes the ATF''s denial of Arwady's license renewal application.[4]

## STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). The court must view the evidence in a light most favorable to the non-movant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir.1997).

Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to come "forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting FED. R.CIV.P. 56(e)). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir.1993) (citation omitted). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint. *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir.1994). Thus, the non-movant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir.1998). It is not the function of the court to search the record on the non-movant's behalf for

---

4. "[A]n application for a license shall be approved if ... the applicant has not willfully violated any of the provisions of this chapter or regulations issued thereunder...." 18 U.S.C. § 923(d)(1); *see also* 18 U.S.C. § 923(e) (stating that the Attorney General may revoke a license if the license holder willfully violates any provision of the chapter or regulation thereunder).

evidence which may raise a fact issue. *Topalian v. Ehrman,* 954 F.2d 1125, 1137 n. 30 (5th Cir.1992).

### LAW & ANALYSIS

■ Both parties agree that an administrative revocation or denial of a federal firearms license by the ATF is subject to de novo judicial review in district court pursuant to 18 U.S.C. § 923(f) (" § 923").[5] A district court employing a de novo standard of review should not attach any presumption of correctness to the ATF's decision; however, a court may give the ATF's determination as much weight as the court deems appropriate. *Willingham Sports, Inc.,* 348 F.Supp.2d at 1306 (citing *Stein's, Inc. v. Blumenthal,* 649 F.2d 463, 467 (7th Cir.1980); *3 Bridges, Inc. v. United States,* 216 F.Supp.2d 655, 657 (E.D.Ky.2002)). Although a court must conduct a de novo review, courts are not required to hold an evidentiary hearing and may enter judgment solely based upon the administrative record. *Stein's, Inc.,* 649 F.2d at 467 (holding that a court's de novo review of a denial of a firearms license "may be confined to the administrative record or may be supplemented by the admission of additional evidence").

■ A district court may grant summary judgment in an appeal from an ATF administrative decision when there are no issues of material fact in dispute. *Willingham Sports, Inc.,* 348 F.Supp.2d at 1307 (citing *DiMartino v. Buckley,* 19 Fed. Appx. 114, 2001 WL 1127288, at *1 (4th Cir.2001); *Sturdy v. Bensten,* 129 F.3d 122, 1997 WL 611765, at *1 (8th Cir.1997)).

Moreover, it is unnecessary for a court to hold an evidentiary hearing prior to ruling on a summary judgment motion. *Id.* (citing *Breit & Johnson Sporting Goods, Inc. v. Ashcroft,* 320 F.Supp.2d 671, 673 (N.D.Ill.2004); *DiMartino v. Buckles,* 129 F.Supp.2d 824, 827 (D.Md.2001); *T.T. Salvage Auction Co. v. Sec'y, U.S. Dep't of Treasury,* 859 F.Supp. 977, 979 (E.D.N.C. 1994)). A court is entitled to consider any evidence submitted by the parties regardless of whether such evidence was presented at the underlying hearing; however, it is a court's own decision whether to receive evidence in addition to the administrative record. *Strong v. United States,* 422 F.Supp.2d 712, 719–20 n. 12 (N.D.Tex. 2006). A court may uphold the ATF's decision if the court determines the evidence supporting the decision is substantial. *Stein's, Inc.,* 649 F.2d at 467.

Arwady moves for summary judgment asserting the ATF's hearing was not conducted according to the standards of the APA. Specifically, Arwady argues that it was entitled to have subpoenas issued in the underlying hearing and the ATF's failure to do so harmed Arwady's case. The Court will first address whether the APA standards apply to the ATF hearing.

### 1. The APA

The APA is a set of regulatory guidelines governing certain federal administrative agency actions to promote uniformity, impartiality, and fairness in agency proceedings. *See Dickinson v. Zurko,* 527 U.S. 150, 155, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) ("The APA was meant to bring uniformity to a field full of variation and diversity."). The provisions of the APA

---

**5.** Section 923(f)(3) governs a licensee's right to appeal an administrative decision to revoke or deny an application for a firearms license to a federal court. *Willingham Sports, Inc. v. ATF,* 348 F.Supp.2d 1299, 1305 (S.D.Ala. 2004), *aff'd per curiam,* 415 F.3d 1274 (11th Cir.2005). Under § 923(f)(3), a person whose

application has been revoked or denied may "file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation." 18 U.S.C. § 923(f)(3).

govern the actions of agencies relating to investigations, adjudications, rule making, licensing, and open meeting and disclosure requirements. *See* 18 U.S.C. §§ 551–559. The APA created strict procedural and evidentiary requirements for federal agency hearings; and, as such, officers presiding over hearings have the ability to, *inter alia,* administer oaths, issue subpoenas, rule on offers of proof, receive relevant evidence, and take depositions. 18 U.S.C. § 556(c). Although Arwady contends the APA's strict requirements apply to its ATF hearing, the Court disagrees because (A) the APA's adjudication standards do not apply to every hearing required by statute and (B) the APA itself explains that it does not apply in all circumstances.

## A. Hearings under the APA

■ The mere existence of the APA does not itself impose a duty upon federal administrative agencies to hold formal, adversarial hearings. *Conley Elecs. Corp. v. F.C.C.,* 394 F.2d 620, 625–26 (10th Cir. 1968). Thus, the APA adjudication requirements do not attach to every agency hearing; the APA simply stipulates the procedure for agencies to follow if a formal hearing is required by another statute. *Id.*

Section 554(a) of the APA, which governs adjudications by administrative agencies, states that APA adjudication standards only apply when an "adjudication [is] required by statute to be determined *on the record* after opportunity for an agency hearing...." 5 U.S.C. § 554(a) (" § 554") (emphasis added). Therefore, the APA's formal proceeding standards, which Arwady asserts apply to its ATF hearing, are only applicable when the governing statute specifies that an agency must conduct a "hearing on the record," as opposed to a

statutory requirement of a "hearing" or a "full hearing." *R.R. Comm'n of Tex. v. United States,* 765 F.2d 221, 227 (D.C.Cir. 1985) (citing *United States v. Fla. E. Coast Ry. Co.,* 410 U.S. 224, 234, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973)). Lower courts have held and the Supreme Court has implied that an agency must conduct its hearing in accordance with the APA's formal adjudication procedures when the statute explicitly calls for a "hearing on the record." *Crestview Parke Care Ctr. v. Thompson,* 373 F.3d 743, 748 (6th Cir.2004).

■ Because the applicability of the APA depends on the type of hearing a statute requires and the GCA governs the hearing Arwady receives, the type of hearing provided by the GCA determines whether the APA applies to the ATF hearing.[6] The GCA provides that "if the Attorney General denies an application for, or revokes, a license, he shall, upon request by the aggrieved party, promptly hold a hearing to review his denial or revocation." 18 U.S.C. § 923(f)(2). *See also* 27 C.F.R. § 478.72 (stating "[i]f the applicant ... desires a hearing to review the *denial* of his application, he shall file a request thereof, in duplicate, with the Director of Industry Operations within 15 days after receipt of notice of denial.") (emphasis added); 27 C.F.R. § 478.73 (explaining that if the Director of Industry Operations *revokes* a license holder's firearms license, the licensee shall have fifteen days upon receipt of notice "in which to request a hearing prior to suspension or revocation of the license....."). Neither the GCA nor the C.F.R. calls for a "hearing on the record." The pertinent sections of both statutes simply state that a person whose application for a federal firearms license is denied or whose license is revoked is enti-

6. The GCA governs the licensing of firearms importers, manufacturers, and dealers and, therefore, is the applicable statute in this matter.

tled to a "hearing" upon request. *See* 18 U.S.C. § 923(f)(2); 27 C.F.R. § 478.72; 27 C.F.R. § 478.73. Therefore, the Court concludes Arwady's denial hearing was not a formal, adversarial hearing to which the APA standards would apply. *See R.R. Comm'n of Tex.*, 765 F.2d at 227–28.

## B. APA Exceptions

Furthermore, the APA provides six exceptions to which its formal hearing procedures do not attach. 5 U.S.C. § 554(a). Thus, if the ATF hearing falls into one of the exceptions, the ATF is not required to conduct its hearing according to APA rules. *Id.* Pursuant to its first exception, the APA's adjudication procedures and standards do not pertain to "a matter subject to a subsequent trial of the law and the facts de novo in a court." 5 U.S.C. § 554(a)(1). Therefore, if the ATF hearing is subject to a subsequent trial of law and fact de novo on appeal to a district court, then the APA adjudication standards do not apply.

■ Arwady contends he is entitled to a de novo review, not a trial de novo; and, therefore, the ATF hearing does not fall within the APA exception.[7] The court disagrees. Although, there is a difference between "de novo" review and "trial de novo", the GCA allows a district court reviewing an ATF's license denial to conduct a trial de novo when the court deems it necessary. *Stein's, Inc.*, 649 F.2d at 466; *see also Strong*, 422 F.Supp.2d at 720 (citing *Stein's, Inc.*, 649 F.2d at 466). As the district court stated in *Stein's, Inc.*, a

district court reviewing the denial of a firearms license de novo has the discretion to hear evidence in addition to the administrative record. *Stein's, Inc.*, 649 F.2d at 466. The additional evidence may be received in various forms, including affidavits and testimony. *See id.* at 466 n. 5. In making its decision whether to hear additional evidence, a court considers judicial economy before requiring a trial anew of factual matters previously litigated. *Id.* at 466. Therefore, while a district court may conduct a trial de novo of the ATF's license denial decision, it is not required to do so. *Id.* Because the Court has the discretion to conduct a trial de novo of the ATF's denial decision, the underlying ATF hearing is a matter to which the APA adjudication procedures do not apply. *See D'Angelo v. Dep't of the Navy*, 593 F.Supp. 1307, 1310 (E.D.Pa.1984) (explaining that whether a matter falls under the APA exception does not depend on whether a trial de novo actually occurs, but whether the underlying administrative proceeding is the type of matter potentially subject to a trial de novo on appeal). Because the ATF hearing is not a formal, adversary hearing to which the APA standards apply and the hearing may be subject to a trial de novo in this Court, the Court finds the APA does not apply to Arwady's ATF hearing, and the ATF properly conducted the hearing.[8]

### 2. Willfulness

Although the Court finds the ATF properly conducted the underlying hearing, the

---

7. Arwady relies on the GCA which states that a license holder may petition a district court "for a de novo judicial review" of the denial or revocation of his or her license. 18 U.S.C. § 923(f)(3).

8. Arwady additionally asserts that the Federal Rules of Evidence should have governed the evidence presented at the ATF hearing. Be-

cause the Federal Rules of Evidence do not expressly apply to administrative proceedings and Arwady provides no authority to support its contention, the Court finds no error in the ATF hearing. *See Nationwide Jewelry & Pawn, Inc. v. United States*, 455 F.Supp.2d 1379, 1383 (M.D.Ga.2006) (citing FED R. EVID. 1101(a), (b)).

Court must conduct a de novo review of the ATF's determination that Arwady willfully violated the GCA. Under § 923(f)(3), a court reviewing a license denial or revocation must decide whether the ATF was authorized to revoke or deny the petitioner's federal firearms license. *Nationwide Jewelry*, 455 F.Supp.2d at 1384 (citing 18 U.S.C. § 923(f)(3)). If the Court finds there is substantial evidence of willfulness, the Court may uphold the ATF's denial of Arwady's license. *See Stein's Inc.*, 649 F.2d at 467.

Arwady argues that its alleged recordkeeping errors were not willful, but simply due to small oversights or mistakes.[9] Arwady further contends that it improved its record-keeping over time and many of the recording errors were insignificant or resulted from the actions of a disreputable employee. The purpose of the GCA is "to keep firearms away from persons Congress classified as potentially irresponsible and dangerous." *Barrett*, 423 U.S. at 218, 96 S.Ct. 498. As specified by statute, an application for a federal firearms license will not be approved if the applicant has willfully violated any provision of the chapter. 18 U.S.C. § 923(d)(1); *but see Willingham Sports, Inc.*, 348 F.Supp.2d at 1309 ("Without a willful violation, the ATF lacks authority to revoke or nonrenew [a] license."). Thus, the Court must determine whether the ATF properly found that Arwady willfully violated the statute.

■■ A license holder commits a willful violation under § 923 if the licensee knew of his legal obligation and purposefully disregarded or was plainly indifferent to the record-keeping requirements. *Strong*, 422 F.Supp.2d at 720–21 (quoting *Willingham Sports, Inc.*, 415 F.3d at 1276); *In re Revocation of the License of Doris Vaughn v. ATF*, No. 1:04MC3–D, 2005 U.S. Dist. LEXIS 41563, at *7 (N.D.Miss. Apr. 12, 2005) (citing *3 Bridges*, 216 F.Supp.2d at 657). Additionally, a violation is willful if the licensee has been informed of the regulations, warned of violations, and continually violates those requirements. *Strong*, 422 F.Supp.2d at 721; *Willingham Sports, Inc.*, 415 F.3d at 1276–77; *Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 464 (6th Cir.2004) (agreeing with the district court's determination that the licensee willfully violated the GCA when the license holder knew he was forbidden from selling handgun ammunition to underage persons and repeatedly violated that obligation). Furthermore, knowledge of the particular regulation violated is not required so long as the licensee disregarded a known legal obligation. *Strong*, 422 F.Supp.2d at 721 (citing *Bryan v. United States*, 524 U.S. 184, 197–98, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998)). Section 923 does not require evidence of a "bad purpose" or "evil motive" in order to support a showing of willfulness. *Id.* (citing *Appalachian Res. Dev. Corp.*, 387 F.3d at 464; *Stein's, Inc.*, 649 F.2d at 467). "Fac-

---

9. Although Arwady asserts it conducted business in accordance with the GCA's intent, this contention is not a valid excuse for its repeated record-keeping errors nor is it an entirely a correct statement. During the ATF hearing, Investigator Frye testified that he discovered numerous unaccounted-for firearms. The Court notes that Arwady cannot keep firearms away from potentially irresponsible or dangerous parties when it cannot testify as to the whereabouts of those fire-

arms. *See Barrett v. United States*, 423 U.S. 212, 218, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976). "Without accurate and meticulous compliance with ... 'paper work' requirements, the very foundation of [the] regulatory system would be compromised." *Nationwide Jewelry*, 455 F.Supp.2d at 1386. Arwady cannot escape the fact that the record indicates it failed to comply with the record-keeping obligations of the GCA for more than ten years.

tors tending to establish 'willfulness' as a matter of law include (1) a licensee's proven knowledge of its record keeping obligations, (2) persistent failure 'to comply with ... the same or similar' provisions, and (3) receipt of a warning letter 'advising [the licensee] that repeated violations of the regulations could result in the revocation of its license.' " *Nationwide Jewelry*, 455 F.Supp.2d at 1385 (citing *Willingham Sports, Inc.*, 415 F.3d at 1277). "[W]here a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis that the dealer 'willfully' violated the GCA." *Appalachian Res. Dev. Corp.*, 387 F.3d at 464.

■ Considering the factors that establish willfulness, a review of the underlying record and the ATF hearing shows that Arwady knowingly and continually violated the GCA requirements for federal firearms license holders.[10] First, the record from the ATF hearing reflects that Arwady knew of its record-keeping obligations. *See Nationwide Jewelry*, 455 F.Supp.2d at 1385. During the ATF hearing, Mr. Ar-

wady acknowledged that the investigator had legitimate concerns regarding Arwady's incorrectly executed forms. Mr. Arwady also testified that he attempted to reconcile his records after his acquittal because he knew that in order to keep his firearms license the ATF would have to conduct a compliance check. Additionally, Mr. Arwady testified that he was aware that it was a violation to transfer a firearm before obtaining approval from the National Instant Criminal Background Check System ("NICS"). Thus, the Court concludes Arwady knew of its record-keeping violations. *See id.*

■ Second, Arwady consistently failed to comply with the statute because the ATF hearing record and the ATF's inspection records reveal Arwady committed hundreds of violations of the GCA over a ten year period.[11] *See id.* During the ATF hearing, Paul Medrano, an employee of Arwady, admitted that, in the course of the 2004 inspection, the ATF discovered 203 government forms on Arwady's premises that had not been recorded in the Acquisition and Disposition Records. Fur-

10. Arwady's self-proclaimed improvement does not negate its record-keeping violations. In *McLemore v. U.S. Treasury Dep't*, 317 F.Supp. 1077 (N.D.Fla.1970), the district court affirmed the revocation of a pawnbroker's federal firearms license when the investigator noted continuous record discrepancies despite improvement from previous faulty recordings. *Id.* at 1078–79. Similar to *McLemore*, Arwady failed to operate in compliance with the GCA despite any improvements it has made in its record-keeping. The inspectors in 2004 noted numerous violations, some of which the ATF had continuously found since the initial 1991 investigation. *See Al's Loan Office, Inc. v. Dep't of Treasury*, 738 F.Supp. 221, 224 (E.D.Mich.1990) (explaining that any improvement in record-keeping was immaterial when the license holder repeatedly violated the GCA over a twelve year period). Thus, Arwady's contention that its record-keeping has improved is unavailing.

11. The severity of record-keeping discrepancies plays no role in evaluating willfulness. *Article II Gun Shop, Inc. v. Ashcroft*, No. 03 C 4598, 2005 WL 701053, *5, 2005 U.S. Dist. LEXIS 18873, at *17–18 (N.D.Ill. Mar. 25, 2005) (stating that case law does not support petitioner's notion that repeated inadvertent errors or technical mistakes should be exempted from the general rule that repeated violations satisfy the wilful requirement) (citations omitted), *aff'd sub nom. Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492 (7th Cir.2006). A single willful violation by a licensee of the GCA is sufficient to authorize the ATF to revoke a license or deny an application. *Appalachian Res. Dev. Corp.*, 387 F.3d at 464 (citing *Cook v. Herbert*, No. 5:03CV0042, 2004 WL 40525, at *2 (W.D.Va. Jan.5, 2004)). Therefore, whether recording errors were minor is immaterial.

thermore, Mr. Medrano testified that he failed to record the disposition of at least one firearm because the store was busy.[12] In the course of his testimony, Mr. Arwady also admitted he failed to timely record the disposition of firearms.[13] At the ATF hearing, Inspector Frye stated that seventy of the 4473s inspected during the 2004 investigation contained errors in violation of the GCA. Regarding illegal firearm transfers, Mr. Arwady admitted he transferred a firearm without NICS approval because he had known the recipient for a period of time. Thus, regarding the second factor of willfulness, Arwady persistently failed to comply with the GCA. *See id.* Finally, the ATF warned Arwady verbally and in writing of its violations following each inspection.[14] Accordingly, Arwady received proper notice of its violations prior to the denial of its license. *See id.*

Arwady's continuous violations of the same record-keeping obligations for more than ten years demonstrate plain indifference to the GCA's record-keeping requirements. *See Willingham Sports, Inc.,* 348 F.Supp.2d at 1311 (finding that a petitioner purposefully disregarded or was indifferent to its recording-keeping obligations under the GCA when it failed to raise its record-keeping to acceptable levels ten years after being notified of its violations). Through his own testimony and that of his employee, Mr. Arwady demonstrates both knowledge of the GCA obligations and fail-

ure to comply with those requirements. *See Nationwide Jewelry,* 455 F.Supp.2d. at 1385. Therefore, the Court finds there is substantial evidence that Arwady willfully violated the GCA and upholds the ATF's decision to deny Arwady's application for its renewal license.[15] *See Stein's, Inc.,* 649 F.2d at 467.

Accordingly, the Court hereby

ORDERS that Respondent's Motion for Summary Judgment (Instrument No. 22) is GRANTED. The Court further

ORDERS that Petitioner's Cross–Motion for Summary Judgment (Instrument No. 24) is DENIED.

### FINAL JUDGMENT

As the Court has granted Respondent Russell M. Vander Werf's Motion for Summary Judgment (Instrument No. 22), the Court hereby

ORDERS that final judgment be entered in favor of Respondent relative to all of Petitioner's claims. Petitioner's claims are DISMISSED.

This is a FINAL JUDGMENT.

---

**12.** Arwady is responsible for all record-keeping errors committed by its employees. *See Stein's, Inc.,* 649 F.2d at 467–68 (citing *Fin & Feather Sport Shop, Inc. v. U.S. Treasury Dep't,* 481 F.Supp. 800, 807 (D.Neb.1979)) ("[W]here ... the licensee is a corporation, it is chargeable with the conduct and knowledge of its employees.").

**13.** The ATF discovered this violation during its 1999 inspection.

**14.** Investigator Frye testified at the hearing and the records indicate that following each

of the inspections Mr. Arwady signed the violation report indicating that he was aware of the violations and that the ATF inspector had explained the violations to him.

**15.** Arwady contends that evidence of Mr. Arwady's acquittal was improperly considered at the ATF hearing. However, the Court finds that there is sufficient evidence of violations from the inspections after Mr. Arwady's acquittal to support the denial of Arwady's firearms license.